CASE·37—PETITION ORDINARY—JUNE 25.

# Bibb vs. Hunter, &c.

APPEAL FROM JESSAMINE CIRCUIT COURT.

One who agreed to become a substitute for another who was drafted to serve in the United States army, and was accepted by a district provost marshal, but rejected by a revisory board because he was too old and infirm, cannot recover the amount agreed to be paid him by the contract of hiring.

HUSTON & DOWNEY for appellant.

B. F. BUCKNER for appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The written memorial being lost, the precise tenor and intent of the contract from which this litigation resulted do not appear, and the oral testimony, which is rather vague, must determine its legal effect.

We infer from that testimony that the appellant, *Bibb*, being drafted into the military service of the United States in the fall of the year 1864, agreed with the appellee, *John Hunter*, that if he would become his substitute and "*go through*," he would pay him $300, which we must interpret as intending that the pecuniary consideration depended on the contingency of the government so accepting the substitute as to bind all parties and *legally* exonerate the appellant.

The appellee, *John*, went to Lexington and tendered himself as the appellant's substitute. The district provost accepted and enrolled him, and gave to the appellant a certificate of exemption; and, thereupon, the appellant paid him $50 and deposited with his brother and co-appellee, *Hardin Hunter*, the remaining $250.

It seems from the testimony that a revisory board at Louisville repudiated that acceptance and enrollment; and, turning the appellee, *John*, loose, gave him a document of discharge, on which *General Scofield*, then commanding the Kentucky Department, indorsed in red ink that the enrollment of such a man discharged, as certified in said document, "*by reason of*

*over* 60 *years of age, disease of leg, and entire loss of front teeth,"* was a fraud by him on the government, whereby he forfeited all claim to "*bounty, pay, and allowance."* And it *was* a fraud even by the examining board or provost at Lexington, or both, as well as by the said *John.* If that board, on examination or without examination, represented him as competent and "all right," they were guilty of falsehood and fraud; and if they represented the truth, and the provost, nevertheless, accepted him as a fit substitute, *he* was certainly guilty of fraud. In any possible phase of the case there was fraud enough to avoid the substitution, and, consequently, the certified exemption—the *opinion* of the accepting *provost,* and also of a deputy paymaster, to the contrary notwithstanding.

The provost of the appellant's county gave a different and apparently much sounder opinion, and re-enrolled the appellant as still subject to the draft; but, as no military law, rule, or order on this subject was produced, none of those mere opinions can be entitled to judicial consideration against the intrinsic presumption that the attempted substitution and consequent exemption were both void; and they seem to have been actually avoided by the ultimate decision of the revisory board.

Then the appellee, *John,* was not finally and legally accepted as the appellant's substitute, and did not, as contemplated, "go through," nevertheless, he may be entitled to retain the $50 advanced to him, probably on the ground that, whatever might be the final issue of the experiment, he would earn that much by his loss of time and services, even though abortive.

But on what principal of law, equity, or morality can he have semblance of just title to the $250 deposited with his co-appellee?

What has he done to deserve it? And what has the appellant gotten or done to lose it?

Even the appellee. *John,* himself seemed to think that he was not entitled to it; for, on his return home, after being dismissed, he said that he had been "*rejected,"* and that the

appellant was entitled to the money promised him for going "through;" and we think so too.

The appellee, *Hardin Hunter*, was enjoined from paying the money of which he was custodian. The appellant, more than once, demanded it of him before he instituted this suit to recover it; and he promised, before and long after the suit was brought, to hold it subject to an adjudication as to the rightful claimant.

If he has wrongfully paid it to *John*, he did so at his peril, and should still pay it to the appellant with legal interest from the date of his first demand of payment in January, 1865.

Wherefore, the judgment dismissing the appellant's petition is reversed, and the cause remanded, with instructions to render judgment in appellant's favor against the appellee, *Hardin Hunter*, as already indicated.